IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Criminal No. 05-02-02 |
| | : | |
| | : | |
| JOSEPH HUSS | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

By the age of 21 Joseph Huss had become a self-taught whiz at computer systems. It appears that he was a disinterested, underachieving student in the formalized educational setting of high school. Although he matriculated all four years, he could not maintain a C average and did not achieve enough credits to graduate. At the computer keyboard, however, he was not only interested, he was remarkably proficient. That proficiency enabled him to earn a living sufficient to support his step-child and fiancee. It also led him to trouble.

Up until the late summer of 2003 on-line file sharing of copyrighted materials was a growth industry. *See* "Criminal Prosecution of On-Line 'File Sharing,'" by Schleiner and Freundlich, *Journal of Internet Law*, Vol. 5, No. 2, August, 2001 (Attachment #1). Among high school students and college students especially the practice of sharing copyrighted music, videos files and video games was commonplace. *See* Attachment #2, containing posted liability warnings on the websites of North Carolina State University, dated 2/13/04, Wake Forest University, dated 4/13/05, and the University of Arizona, undated. Although vague warnings of civil and criminal prosecutions appeared from time to time in the press, there had been no criminal prosecutions for file sharing. Most of the individuals involved in file sharing of protected titles thought that their

activities would go unnoticed or be overlooked.  It had become the culture of the young that it was no big deal.  The first such prosecution of which counsel for Mr. Huss is aware resulted in a guilty plea on August 21, 2003.  *See* http://www.arizona.edu/home/p2p-programs.php., attached in #2.

According to the presentence investigation report the government's investigation determined that Mr. Huss was engaged with a multitude of others in illegal file sharing of protected files from January 21, 2003 until October 23, 2003.  He did not ever realize cash gain or direct monetary gain from his file sharing activities.  What he received, and others in his group received, was access to copyrighted titles at no cost to themselves.

On October 23, 2003, FBI agents entered Mr. Huss' apartment in Bloomfield, New Jersey, to execute a search warrant.  Mr. Huss was cooperative and provided a signed statement to the agents.  His cooperation with authorities continued after that date and the government has determined that his assistance was substantial.  A Motion for Downward Departure Pursuant to U.S.S.G. § 5K1.1 has accordingly been filed.

The defense does not challenge the calculation of the sentencing guideline range as it is presented in the presentence investigation report.  *See* ¶¶ 44-53, 62-62, and 92.  The offense level of 17 is conforms to the stipulations to which the government and Mr. Huss entered in his plea agreement.  The Criminal History Category is properly set at II.  The applicable sentencing guideline range is therefore 27 - 33 months.  This guideline range, however, is only the initial step in endeavoring to arrive at a reasonable sentence in this matter.  *United States v. Booker*, 125 S.Ct. 738 (2005).  The Court must also consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant, in fashioning a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3353(a)(2).  *Id.*

The government has already indicated by its Motion for Downward Departure that it believes that a reasonable sentence for Mr. Huss would be lower than 27 months. Mr. Huss readily helped the investigators track down a larger group of individuals who were engaging in prohibited file sharing. This was done before Mr. Huss had legal representation and before he knew about the federal sentencing guidelines or how they might pertain to his situation.

A consideration of the nature and circumstances of the offense and the history and characteristics of Mr. Huss does not, however, end with an examination of his cooperation. The nature of the offense must be addressed. While it does not excuse Mr. Huss' conduct, it cannot be overlooked that the activities for which he stands convicted was extremely commonplace at the time and was viewed by the many participants as being relatively harmless. The movie, music and video game industries are quick to point out that these activities are not harmless and have a damaging cumulative effect. Hence there has been pressure on the government to prosecute as a way to undermine the culture that has encouraged and condoned file sharing. General deterrence is the ultimate object of such prosecutions. The threat of the felony conviction itself is sufficient. The threat of incarceration is not necessary to deter file sharing. The demographic of the average file sharer it is suggested is a student or college-aged individual who owns a computer with software and additional equipment which permit uploading and downloading large files. These characteristics generally apply to members of a segment of society for whom a felony conviction's collateral consequences can be devastating. The prospect of jail certainly operates as a strong deterrent, but it is more than is necessary to adequately deter prohibited file sharing. The nature and timing of Mr. Huss' criminal activity and his conviction is therefore such that incarceration is not necessary to comply with the purposes of sentencing including establishing respect for the law, meting out appropriate punishment and deterring others from similar prohibited activity.

The history and characteristics of Mr. Huss would similarly indicate that a non-incarceration sentence is sufficient, but not greater than necessary, to punish him for his conduct, to deter him from future criminal activity and to provide the appropriate conditions for his effective rehabilitation. He was 22 years old, when his relevant conduct was terminated. His rehabilitation began the moment the authorities arrived at his residence with a search warrant, when he began to fully cooperate with them. His work history provides evidence of his desire and prospect for successful rehabilitation. Despite the lack of a high school diploma or a GED, he has demonstrated the intellect and the perseverance to have achieved a moderate level of success as a computer systems administrator. He has found his niche. In the two years since his prohibited activity ceased he has begun to demonstrate that he is willing to assume the responsibilities of adulthood, fatherhood and husband. He has proved willing to take on the previous hospital bills of his fiancee's daughter. Despite a prior history of marijuana use there has been no indication of any positive urines since he was placed on pretrial supervision. All of these factors would suggest the sufficiency and efficacy of a non-incarceration sentence.

For the foregoing reasons the Court is respectfully urged to sentence Mr. Huss to probation. To the extent that the Court is compelled to impose a fine it is requested that the fine imposed be an amount that is sufficient to provide just punishment, but does unduly impair his chances to develop a positive environment for his family.

Respectfully submitted,

_____
Mark Wilson
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Mark Wilson, Assistant Federal Defender, Defender Association of Philadelphia, Federal Court Division, hereby certify that I have served a copy of the Defendant's Sentencing Memorandum on Assistant United States Attorneys Michael J. Levy and Clement J. McGovern, located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania, 19106, by delivery to their office.

                    Mark Wilson
                    Assistant Federal Defender

Date:   October 31, 2005